Irwin D. Davidson, J.
The defendant here moves to inspect the Grand Jury minutes, or, in the alternative, to dismiss the indictment. He contends that this court does not have jurisdiction of the crimes charged in the indictment on the ground that he committed no act in the State of New York which would subject him to such jurisdiction.
The three-count indictment charges the defendant with the crimes of coercion in violation of section 530 of the Penal Law; of suppressing evidence in violation of section 814 of the Penal *301 Law; and of preventing and dissuading a witness from attending in violation of section 2441 of the Penal Law.
In substance, the indictment charges the defendant with unlawfully and wrongfully attempting on May 30, 1959, to intimidate John Kattis in connection with his appearance in the Court of General Sessions as a witness in the case of People v. Farris.
The defendant contends, and the testimony before the Grand Jury bears him out, that on May 30, 1959, and, indeed, throughout the entire month of May, 1959, he was not in the County of New York or even the State of New York, but was in Washington, D. C. His contention, therefore, is that he could not have committed any crime in the State of New York.
He further urges, that even assuming while in Washington, D. C., he suggested that the witness John Kattis not testify in the case of People v. Farris, nevertheless the witness entertained no thought of not testifying, since in point of fact the witness was then acting as an agent of the New York County District Attorney’s office. Thus, he argues that under no circumstances could there have been a completed crime anywhere. The defendant cites People v. Werblow (241 N. Y. 55), to support his position.
In effect, the defendant raises this question of law — do the New York statutes apply to one who, in a foreign State, induces a witness in a New York criminal case to come to a foreign State, where the witness is there subjected to unlawful coercion, threats and intimidation not to appear at the criminal trial? May he be prosecuted in the State of New Yoi’k for such out-of-State acts?
The evidence before the Grand Jury indicates that, in response to the defendant’s telephone call made from Washington, D. C., to John Kattis in New York, Kattis ivent to Washington where he met and talked to the defendant. The People claim that by this telephone call and the conferences that followed it in Washington, D. C., the defendant subjected Kattis to unlawful coercion, threats and intimidation.
Section 1930 of the Penal Law relates to persons who are liable to punishment within the State. Subdivision 5 thereof reads as follows: “ A person who, being out of the state and with intent to cause within it a result contrary to the laws of this state, does an act which in its natural and usual course results in an act or effect contrary to its laws.”
Section 1933 of the Penal Law prescribes ‘1 Punishment of acts committed out of the state, ’ ’ and provides: “ A person who commits an act without this state which affects persons or propery -within this state, or the public health, morals, or decency of *302 this state, and which, if committed within this state would he a crime, is punishable as if the act were committed within this state.”
A reading of the foregoing sections clearly indicates that they cover the instant case. This defendant, who was outside the State, allegedly used coercion, threats and intimidation unlawfully and intended to prevent the witness, John Kattis, from testifying in a criminal ease in this State. He is charged with and intended by his conduct to cause within this State a result contrary to its laws, namely, to intimidate the witness and prevent his appearing and testifying in a criminal case pending here.
The defendant claims that mere “ incitement ” from without the State which does not result in a completed crime in New York may not be punished as a criminal act within this State (People v. Werblow, supra). This case upon which the defendant relies to support his position does not sustain his claim. The Werblow ease involved a charge of grand larceny by false pretenses. In that case a criminal plan was conceived in New York but the actual larceny occurred in London. It is necessary to limit the application of that case to its particular facts.
The defendant’s argument overlooks the fact that in the Werblow case the test was whether the acts committed in this State constituted an attempted crime which, if completed outside this State, affected the public health, morals or decency of this State. There, the crime of larceny was committed in London and thus was a crime which, under the circumstances, would not affect the public health, morals or decency of this State and was not here punishable.
In the instant case, the crime of coercion, committed without the State, would affect the due administration of justice in New York and is therefore an act clearly envisaged by the statutes hereinabove quoted.
The alleged unlawful conduct of the defendant in Washington, D. 0., in attempting to coerce, intimidate and threaten the witness Kattis, so as to dissuade him from testifying at a criminal trial in this State affects the administration of justice in this State, and was intended to cause a result contrary to the laws of the State of New York.
To pursue the defendant’s contention to its logical conclusion would lead to a startling result. It would imply that any person, despite the clear wording of the afore-mentioned sections of the Penal Law, could, with complete impunity, induce, lure or persuade a witness in a criminal prosecution pending in New York State to come to another jurisdiction and there subject such *303 witness to coercion, intimidation and threats, preventing him from appearing in the New York courts. Our statutes clearly impose criminal responsibility for such unlawful conduct. To construe the statutes otherwise could well mean a breakdown in the enforcement of the criminal law in this State not contemplated by the Legislature.
The defendant further contends that, assuming the witness Kattis to have been subjected to coercion, threats and intimidation in Washington, D. 0., yet, at the time he was so pressured, he was in fact an agent of the District Attorney and, therefore, never entertained any thought of not testifying as a witness in the Court of General Sessions. The defendant urges, therefore, that since there could be no completed crime, the witness never intended not to testify and, therefore, the defendant may not be punished in New York for an uncompleted crime.
The defendant can find no refuge in this contention. The act sought to be punished is the defendant’s act. The critical issue to be determined is what was Ms intent at the time he allegedly exerted unlawful coercion, threats and intimidation, not the state of mind of the witness Kattis. Once the illegal and unlawful attempt to intimidate is established, the state of mind of the witness Kattis is irrelevant. The latter’s intent is not in any sense an element of the crime. The fact that the witness Kattis may have had every intention of testifying, since he had enlisted the assistance of the District Attorney in seeking to thwart the defendant’s unlawful scheme would not detract from the alleged unlawful and criminal efforts exerted by the defendant to dissuade Kattis from testifying in the Court of General Sessions. For the crime of preventing or dissuading a witness to be complete, it is not necessary that the defendant succeed in his attempt (People v. Hamm, 140 Misc. 335).
It cannot be disputed that New York State has jurisdiction over an offense committed partly in this State and partly elsewhere. The defendant’s act of contacting the witness Kattis here in New York by telephone from Washington is a constituent element of the crime intimidating the witness which would render the defendant amenable to the New York courts (People v. Zayas, 217 N. Y. 78). A case involving a similar situation in the Federal courts is Smith v. United States (92 F 2d 460). That case involved a conspiracy to violate the White Slave Traffic Act. A telephone call had been made from Hawaii to Los Angeles. The defendant, prosecuted in the Federal District Court in Los Angeles, challenged the jurisdiction of the court claiming he committed no act in Los Angeles. In rejecting this contention (p. 461) the court stated: ‘1 The telephone from *304 Honolulu, to Los Angeles brings the conspiracy both within the Territory of Hawaii and the Southern District of California. An overt act is more than evidence of a conspiracy. It is a part of the conspiracy itself, and where, as here, it is alleged as occurring in the Territory and in California, it is sufficient to make it an offense within the statute, even though the indictment had stated that the place in which the conspiracy was formed is unknown. (Hyde v. U. S., 225 U. S. 374, 360; 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 400, 32 S. Ct. 812, 56 L. Ed. 1136).”
Here the testimony before the Grand Jury shows that as a first step the defendant telephoned from Washington, D. C., to Kattis in New York urging the latter to meet him in Washington, D. C. That telephone call was in furtherance, and an integral part of, the defendant’s illegal purpose to unlawfully coerce, threaten and intimidate the witness Kattis in this State. The defendant, having thus committed a part of his crime in New York, is amenable to the jurisdiction of our New York courts (Penal Law, § 1930, subd. 5; People v. Zayals, 217 N. Y. 78; People v. Valcarcel, 9 Misc. 1096; People v. National Radio Distrs. Corp., 9 Misc. 824).
For the purposes of this motion, the court finds that from the evidence adduced before the Grand Jury that the defendant committed an act within this State. He contacted the witness Kattis by telephone and thereby induced him to come to Washington, D. C., where the defendant completed the crime of exerting unlawful coercion, threats and intimidation. The telephone call was a constituent part of this unlawful act.
Indeed, the provisions of subdivision 5 of section 1930 of the Penal Law and section 1933 would apply even if the defendant had not telephoned to Kattis from Washington, D. C. The sum total of all of the alleged acts committed in Washington, D. 0., as disclosed by the Grand Jury minutes and designed to prevent Kattis ’ appearance as a witness in General Sessions, would subject the defendant to the criminal jurisdiction of the New York courts by reasons of the Penal Law sections afore-mentioned.
After reading the Grand Jury minutes the court finds that all the evidence adduced before the Grand Jury is such which, if unexplained or uncontradicted, would warrant a conviction by the trial jury.
Accordingly, defendant’s motion is in all respects denied.