OPINION OF THE COURT
Lee H. Elkins, J.
Dylan C., 16 years old, is charged in a juvenile delinquency proceeding with acts which if committed by an adult would constitute the crime of escape in the second degree. (Penal Law § 205.10 [1].) The supporting deposition of Fabian Springer, child care worker at Catholic Guardian Non-Secure Detention Center, states that on March 20, 2008, at approximately 8:00 p.m., he “heard an alarm sound in the facility, indicating that a secure door had been opened,” and “observed the Respondent outside of the door, running from the facility.” The worker jumped into the facility van, caught up with the respondent a few blocks away, and returned the respondent to the facility. According to Mr. Springer, the respondent did not have permission or authority to leave the facility. Attached to the deposition is an order of the Family Court, Queens County, remanding the respondent to the Department of Juvenile Justice “open to start NSD,” pending a fact-finding hearing on another juvenile delinquency petition. The remand order finds the respondent’s detention necessary pursuant to Family Court Act § 320.5 “because there is a serious risk the Respondent may before the return date commit an act which if committed by an adult would constitute a crime.”
The respondent moves to dismiss the petition as facially insufficient, in that the deposition does not contain nonhearsay allegations supporting every element of the offense charged. (Family Ct Act § 311.1 [3]; § 311.2.) Specifically, the respondent argues that the nonsecure facility in which he was placed by the Department of Juvenile Justice, pursuant to the court’s order, was not “a detention facility” within the meaning of the felony escape statute. The petitioner argues that nonsecure facilities are detention facilities as defined by Penal Law § 205.00 (1).
A person is guilty of escape in the second degree when, inter alia, “[h]e escapes from a detention facility.” (Penal Law § 205.10 [1].) A detention facility “means any place used for the confinement, pursuant to an order of a court, of a person . . . *944 charged with being or adjudicated a youthful offender, person in need of supervision, or juvenile delinquent.” (Penal Law § 205.00 [1] [b].) Insofar as the plain language of the statute appears to extend to persons in need of supervision (PINS) remanded pursuant to a court order, it is misleading. Persons in need of supervision may not lawfully be placed in a secure detention facility. (Family Ct Act § 720 [2]; and see Matter of Naquan J., 284 AD2d 1 [2d Dept 2001].) Despite the express language of the escape statute, it has been construed to exclude nonsecure facilities used to house juveniles found to be persons in need of supervision. (Matter of Sylvia H., 78 AD2d 875 [2d Dept 1980].) The basis of this exclusion is to prevent “bootstrapping” a status offense into a juvenile delinquency proceeding, by charging the status offender with escape when he or she runs away from placement. (See e.g. Matter of Freeman, 103 Misc 2d 649 [Fam Ct 1980]; and see Matter of Jasmine A., 284 AD2d 452 [2d Dept 2001].) Therefore, the statute has no application to persons in need of supervision.
The statute is further limited by construction. In People v Ortega (69 NY2d 763, 764 [1987]), the Court of Appeals held that “a nonsecure facility does not constitute a detention facility within the meaning of Penal Law § 205.00 (1).” In Ortega, after being found not criminally responsible by reason of mental disease or defect, the defendant was committed to the custody of the Commissioner of Mental Health. (CPL 330.20 [9].) Initially, the Commissioner placed Ortega in a secure psychiatric facility. While a second retention order was in effect, the Commissioner transferred Ortega to a nonsecure facility, after determining that such placement was consistent with the public safety and welfare of the community. Ortega left the nonsecure facility and was indicted for escape in the second (Penal Law § 205.10) and third (Penal Law § 205.05) degrees. The Court of Appeals upheld dismissal of the indictment. The court observed that when transferring Ortega, the Commissioner determined that Ortega no longer suffered from a dangerous mental illness and that the transfer was warranted by his clinical condition. The Court of Appeals noted that the purpose of Ortega’s custody with the Commissioner of Mental Health was no longer security, confinement, and prevention of escapes, but was therapy and rehabilitation. The court dismissed the escape charges under both degrees of the statute. (Cf. e.g. People v Walter, 115 AD2d 52 [4th Dept 1986] [escape from a secure psychiatric facility is subject to prosecution] [cited with approval in Ortega].)
*945 The petitioner argues that the respondent’s confinement pursuant to the remand order was not rehabilitative, but was a form of preventive detention (Schall v Martin, 467 US 253 [1984]), and that Ortega and the status offense cases are therefore distinguishable. According to the petitioner’s interpretation, whether the respondent was in a detention facility would depend upon the purpose stated in the order of commitment, rather than upon the nature of the facility. Both alleged juvenile delinquents and persons alleged to be in need of the court’s supervision are housed in nonsecure facilities.[1] Adopting the petitioner’s approach, facilities characterized by identical physical construction and conditions of custody would or would not be considered detention facilities, depending upon the wording of the order of commitment. This would be an unwieldy standard, failing to give fair notice of the prohibited conduct to the juvenile respondent. Nor is the proposed standard based upon the plain wording of the statute.
It is apparent from the holding in Ortega that the application of the escape statute turns on the nature of the facility, and not on the potential scope of the remand order. Here, as in Ortega, the person subject to the order may have been detained in either a secure or a nonsecure setting, at the discretion of the Commissioner. The Family Court remanded the respondent to the Commissioner of Juvenile Justice “open to start NSD.” The effect of the order was to require the Commissioner initially to place the respondent into a nonsecure facility, with the discretion to transfer the respondent to a secure setting. The Commissioner’s remedy, were the respondent to attempt to leave the nonsecure facility, was to transfer him to a secure setting.[2]
In the court’s opinion, the cases may be reconciled by reference to the meaning of confinement, as used in the definition *946 section of the escape article. The scope of the escape statute is not determined simply by whether the respondent is in “detention,” or whether the purpose of the detention is therapeutic or preventative,[3] but rather whether the respondent is “confined.” The definition section of the escape article states that a detention facility is “any place used for the confinement, pursuant to an order of a court,” of certain categories of juveniles. Confinement is defined as “[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained.” (Black’s Law Dictionary 318 [8th ed 2004].) While persons in need of supervision may be placed in detention, they cannot be imprisoned or restrained. (See e.g. Matter of Caitlin W, 262 AD2d 696 [3d Dept 1999].) Similarly, while Ortega was committed pursuant to the second retention order, he was not imprisoned. As noted by the Court of Appeals, once Ortega was transferred to a nonsecure setting, the purpose of his retention was “no longer ‘security, confinement, and prevention of escapes’ ” (69 NY2d at 765 [emphasis added]). The same distinction exists between a secure and a nonsecure detention facility. Family Court Act § 712 defines a “[s]ecure detention facility,” as “[a] facility characterized by physically restricting construction, hardware and procedures.” (Family Ct Act § 712 [c].) The same section defines a “[n]on-secure detention facility,” as “[a] facility characterized by the absence of physically restricting construction, hardware and procedures.” (Family Ct Act § 712 [d].)
This distinction also finds support in cases holding that a juvenile in the custody of the police or of a public servant pursuant to court order may be subject to prosecution for escape in the third degree. A person is guilty of escape in the third degree when he escapes from custody. (Penal Law § 205.05.) Custody is defined as “restraint by a public servant pursuant to an authorized arrest or an order of a court.” (Penal Law § 205.00 [2] [emphasis added].) This statute has been held to apply to juveniles who escape from the police following lawful arrest (see e.g. Matter of Bryan JJ., 175 AD2d 416 [3d Dept 1991]), or from *947 an agency case worker in whose custody the respondent had been placed under a court order in a delinquency case. (Matter of Bernard T., 250 AD2d 532 [1st Dept 1998].)
For the foregoing reasons, the court finds that the petition fails to allege facts which, if true, would establish that the respondent escaped from a “place used for the confinement . . . of a . . . juvenile delinquent” within the meaning of Penal Law § 205.00 (1) (b) and § 205.10 (1). Therefore, the petition is dismissed as legally insufficient.

. See Executive Law § 502 (3) (“ ‘Detention’ means the temporary care and maintenance of youth held away from their homes pursuant to article three or seven of the family court act” [emphasis added]); and see County Law § 218-a (B) (“Notwithstanding any other provision of law, each board of supervisors shall provide or assure the availability of conveniently accessible and adequate non-secure detention facilities, certified by the state division for youth, as resources for the family court in the county pursuant to articles seven and three of the family court act, to be operated in compliance with the regulations of the division for youth for the temporary care and maintenance of alleged and adjudicated juvenile delinquents and persons in need of supervision held for or at the direction of a family court” [emphasis added]).

. This authority avoids the PINS dilemma, whereby courts have no authority to order secure detention in status cases. The court also had the option of directing that the respondent’s remand be limited to a secure or to a nonsecure facility.

. The petitioner’s proposed distinction between “therapeutic and rehabilitation” detention versus “public safety” detention fails as to juveniles, as all juvenile detention facilities are required to be therapeutic. Family Court Act § 712 (b) defines “[detention” as “[t]he temporary care and maintenance of children away from their own homes.” Executive Law § 504 (1) states: “The division shall operate and maintain secure, limited secure and non-secure facilities for the care, custody, treatment, housing, education, rehabilitation and guidance of youth placed with or committed to the division” (emphasis added).